GANN et al. v. JACKAW LUMBER CO.

(Division B. Nov. 15, 1937.)

[177 So. 4. No. 32885.]

Bramlett Roberts, of Oxford, for appellants.

Chester L. Sumners, of Corinth, for appellee.

804

**Ethridge, P. J.**, delivered the opinion of the court.

Appellee, the Jackaw Lumber Company, filed suit in the circuit court of Alcorn county against appellants, L. C. Gann et al., on certain notes payable six months after date and providing for attorneys' fees etc. These notes were assigned, without recourse, by the Corinth Bank & Trust Company, the payee therein, to J. E. Potts who, in turn, assigned same, without recourse, to the appellee, Jackaw Lumber Company.

Appellants moved to transfer the cause from the circuit to the chancery court, which motion was granted, and the answer in the chancery court set up a contract between the Jackaw Lumber Company and L. C. Gann, dated August 8, 1933, reciting, among other things, the giving of the notes and deed of trust to the bank; the assignments thereof; and that, "The Jackaw Lumber Company, as first party, hereby agrees to release to L. C. Gann the right to cut the timber from said land, (referring to the land conveyed in the trust deed securing the notes sued on). The second party agrees to cut and saw or manufacture the lumber at his own expense and sell all lumber sawed from the land to, or through, the first party. The first party agrees to pay fair and reasonable market value for said lumber according to grade. The first party will give orders and prices, and give shipping instructions to second party as in ordinary

course of business between sawmill operator or owner and a lumber company engaged in selling lumber. The second party agrees to give first party notice of amounts and grades of lumber that will be ready for sale from date to date. The party shall have a reasonble time in which to sell the said lumber." It was also agreed that should the first party not offer a satisfactory price, the second party could refuse to sell, and should not cut any more timber until that already cut is sold through the Jackaw Lumber Company; and that the lumber should be shipped with invoices payable to the Jackaw Lumber Company, and out of the net proceeds the lumber company was to deduct $4 per thousand feet to be credited on the notes, and remit the balance to L. C. Gann, and credit further amounts on his order. It was further agreed that when the credits from the sale of the lumber should total $2000, with interest from date at 8 per cent. per annum, the said $2000 and interest was to be in full payment of the notes of L. C. Gann, and the Jackaw Lumber Company was to surrender said notes to Gann. It was further agreed that the second party was to cut, saw, and sell enough timber within 12 months to pay the $2000 and interest. It was also agreed that the second party was to pay all taxes on the land, and redeem it from tax sales already made, at least 45 days before the expiration of the redemption date, and that, in event of a breach of this contract, the original notes and trust deed would hold and not be canceled.

There was cutting of the timber and sale of same during the period, but it was contended by Gann, and he so testified, that he sawed 75,000 feet of timber during the early part of the year the contract was in existence; and notified the lumber company thereof, but it did not buy or give shipping orders, and, as a consequence thereof, the timber rotted and was so damaged as not to be saleable. He said he gave similar notices from day to day as to the timber cut from said tract.

A member of the Jackaw Lumber Company testified that no such notice was given to the company.

There was one shipment of pole stock made on the required invoice in the name of the Jackaw Lumber Company which appeared to be defective and was rejected when it reached the point of shipment.

By the contract under which this shipment was made, it was provided that the grading of the lumber was to be at destination, but if shipper was dissatisfied with the grading, it could have the lumber graded by the Southern Pine Association. It is shown by the testimony that this pole stock was of an inferior grade, and the Jackaw Lumber Company so notified L. C. Gann and requested him to go to St. Louis and inspect it, or put on an inspector from the Southern Pine Association, which he refused to do, but authorized the Jackaw Lumber Company to settle as best it could.

There was a good deal of conflict in the testimony; some corroborating that in favor of the contentions of the Lumber Company, and some corroborating the contentions of L. C. Gann.

The court below held that the contract did not bind the Jackaw Lumber Company to buy the lumber, and that it was only a sales contract, saying that: ''While under the contract, the Jackaw Lumber Company could buy direct, from Mr. Gann, taken as a whole, it clearly shows they are the selling agents, or at least, there is nothing compelling them to buy direct. The fourth paragraph of the first page reads, 'The second party agrees to cut, the second party being Mr. Gann, agrees to cut and manufacture the lumber at his own expense and sell all lumber sawed from the land to or through the first party.' There is no binding agreement on the part of the Jackaw Lumber Company to buy. He agreed to sell it to them or through them.''

We think the court below was in error as to its construction of the contract. It is expressly provided therein that, ''The first party agrees to pay a fair and

reasonable market value for said lumber according to the grades,'' and it was further stipulated that the second party agreed to cut and saw lumber from the land to be sold to or through the first party. The provision in the contract that the first party agrees to pay a fair and reasonable market value binds the party to pay such price, and binds the second party, Gann, to sell to the first party, providing that he could not sell to a third party without forfeiting his rights under the contract. We think the contract forced the first party, the lumber company, to take the shipments at a fair market price, and, if it did not sell to others at a fair market value, to pay therefor; and if Gann's testimony is true, he was entitled to a credit on his indebtedness for the value of the lumber, and that its value was damaged and it was rendered worthless, by the neglect of the lumber company, after due notice, to take the lumber and sell it, or pay Gann for it, and that if these facts existed, the lumber company could not forfeit the contract and resort to the original notes. It seems that, at the end of the year, neither party to the contract terminated it, but continued to have dealings in reference thereto during 1935 and 1936.

It is urged by appellee, the lumber company, that the contract entered into on August 8, 1933, was without consideration and was insufficient to reduce the amount due under the notes and deed of trust. The arrangement was to have the timber cut, marketed, and sold to or through the Jackaw Lumber Company, and such an arrangement constituted a valuable consideration, and if the contract was not breached by L. C. Gann, the Jackaw Lumber Company could not recover the full amount due under the original notes.

The judgment of the court below, therefore, will be reversed and the cause remanded.

Reversed and remanded.